# Exhibit A

PREET BHARARA
United States Attorney for
the Southern District of New York
By:   EDWARD B. DISKANT
      Assistant United States Attorney
      One St. Andrew's Plaza
      New York, New York 10007

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - x
                              :
UNITED STATES OF AMERICA      :

        - v. -                :

                              :        VERIFIED COMPLAINT
CERTAIN FUNDS ON DEPOSIT IN   :
VARIOUS ACCOUNTS DETAILED HEREIN,  :
AND ALL FUNDS TRACEABLE THERETO,

                              :

        Defendants-*in-rem*.   :

- - - - - - - - - - - - - - - x

        Plaintiff United States of America, by its attorney, Preet

Bharara, United States Attorney for the Southern District of New

York, for its verified complaint alleges, upon information and

belief, as follows:

## I. NATURE OF THE ACTION

        1.   This action is brought by the United States pursuant

to Title 18, United States Code, Sections 981(a)(1)(C), 981(a)(1)(A)

and 984 seeking to recover approximately $25 million which

constitutes the proceeds of a scheme to defraud an American company

(the "Victim Company") through the use of false and fraudulent

representations made through use of the wires, property involved in

international money laundering, and the fruits of transnational

organized crime.

2.    As set forth in more detail below, through false and deceptive representations made by email over the course of several weeks in August and September of 2015, the perpetrators of this scheme caused the Victim Company to transfer approximately $98,879,545.80 in United States currency from accounts under its control in the United States to an account bearing the account number 201100290413 at Eurobank Cyprus, Ltd. ("Subject Account-1"). Specifically, the perpetrators of this scheme impersonated a legitimate vendor doing business with the Victim Company and then fraudulently deceived the Victim Company into transferring nearly $99 million that was due to the legitimate vendor to a new account that was in fact under the control of the perpetrators of this fraudulent scheme.

3.    Moreover, and to further conceal and dissipate the proceeds of this fraud, almost immediately after the Victim Company began transferring funds to Subject Account-1, the perpetrators of this scheme caused portions of the fraud proceeds to be further dispersed to at least 19 additional accounts under their control and located around the world (the "Additional Accounts").

4.    In September 2015, Eurobank Cyprus Ltd. identified the transfers from the Victim Company to Subject Account-1 as potentially suspicious and restrained, on its own initiative, nearly

2

$74 million that had been directed to be transferred from the Victim Company to Subject Account-1.   In concert with United States and Cypriot authorities, those funds have since been returned to the Victim Company and are not a subject of this action.   More than $25 million obtained through fraud from the Victim Company has not yet been recovered, and those funds are the subject of this action.

   5.   In regard to those remaining funds, by this complaint, the United States seeks to forfeit the following:[1]

   a. Any and all funds including but not limited to $284,483.00 in United States currency on deposit in account number 201100290413 at Eurobank Cyprus, Ltd., and all funds traceable thereto (*i.e.* Subject Account-1);

   b. Any and all funds including but not limited to $7,087,347.00 in United States Currency on deposit in account number 001201100291563, in the name of Moonbigtwo at Eurobank Cyprus, Ltd., and all funds traceable thereto ("Subject Account-2");

   c. Any and all funds including but not limited to $324,705.00 in United States currency on deposit in account number 240-07-448428-01 in the name of Glendown Holdings at Hellenic Bank, Cyprus, and all funds traceable thereto ("Subject Account-3");

   d. Any and all funds including but not limited to €399,898.00 in Euros on deposit in account number 240-01-448428-01 in the name of

---

[1] Upon forfeiture of these funds, the Government understands that the Victim Company will file a Petition for Remission pursuant to Title 28, Code of Federal Regulations, Part 9 in order to recover the stolen funds.

Glendown Holdings at Hellenic Bank, Cyprus, and all funds traceable thereto ("Subject Account-4");

e. Any and all funds including but not limited to $2,362,506.00 in United States currency on deposit in account number LV86AIZK0000010395370, in the name of Exellit Sales LLP at ABLV Bank AS, Latvia, and all funds traceable thereto ("Subject Account-5");

f. Any and all funds including but not limited to $184,093.00 in United States currency on deposit in account number LV27AIZK0000010385083, in the name of Exgold Import LLP at ABLV Bank AS, Latvia, and all funds traceable thereto ("Subject Account-6");

g. Any and all funds including but not limited to $636,900.00 in United States currency on deposit in account number LV69KBRB1111217256001, in the name of Deltaway Systems LP at Trasta Komercbanka, Latvia, and all funds traceable thereto ("Subject Account-7");

h. Any and all funds up to and including $320,000.00 on deposit in account number LV54MULT1010910170010, in the name of Burgenland AG Inc. at Meridian Trade Bank, Latvia, and all funds traceable thereto ("Subject Account-8");

i. Any and all funds including but not limited to $981,026.00 in United States currency on deposit in account number LV24CBBR1122808800010, in the name of Nokletto Industries Limited at Baltikum Bank AS, Latvia, and all funds traceable thereto ("Subject Account-9");

j. Any and all funds including but not limited to $3,030.90 in United States currency on deposit in account number LV43RTMB0000179806172, in the name of Max Crown S.A. at Reitumu Banka, Latvia, and all funds traceable thereto ("Subject Account-10");

k. Any and all funds including but not limited to $325,000.00 in United States currency on deposit in account number LV35RTMB0000628806803, at Reitumu Banka, Latvia, and all funds traceable thereto ("Subject Account-11");

l. Any and all funds including but not limited to $67,800.00 on deposit in account number LT674010044100013509, at AB BND Bankas, Lithuania, and all funds traceable thereto ("Subject Account-12");

m. Any and all of the funds including but not limited to $342,056.40 in United States currency on deposit in account number SK8865000000000020534640, at Postova Bank AS, Slovakia, and all funds traceable thereto ("Subject Account-13");

n. Any and all funds including but not limited to €61,000.00 in Euros on deposit in account number HU94107001100954370250000005, in the name of "Avikom Ltd" at CIB Bank ZRT, Hungary, and all funds traceable thereto ("Subject Account-14");

o. Any and all funds including but not limited to $8,911,024.00 on deposit in account number EE973300333500430009, in the name of Torir Inter LP at Danske Bank, Estonia, and all funds traceable thereto ("Subject Account-15");

p. Any and all funds including but not limited to $240,000.00 in United States currency on deposit in account number 848560678838 in the name Dingseng HK Co. Ltd., at HSBC Bank, Hong Kong, and all funds traceable thereto ("Subject Account-16");

q. Any and all funds including but not limited to €872,603.84 in Euros on deposit in account number HU051030000210538652488200011, in the name of "Romantick Style Ltd" at MKB Bank ZRT, Hungary, and all funds traceable thereto ("Subject Account-17");

r. Any and all funds including but not limited to $67,520.37 on deposit in account number LV78LATB0006020137348, maintained in the name of "Ideals Solutions Group S.A.," at Norvik Banka JSC, Latvia, and all funds traceable thereto ("Subject Account-18");

s. Any and all funds including but not limited to $2,911,745.26 on deposit in account number LV65KBRB1111216560001, maintained in the name of "Privaled Construction LP" at Trasta Komercbanka, Latvia, and all funds traceable thereto ("Subject Account-19");

t. Any and all funds including but not limited to $3,836,200.00 on deposit in account number LV72KBRB1111232037001, maintained in the name of "Corwald Transit LP" at Trasta Komercbanka, Latvia, and all funds traceable thereto ("Subject Account-20");

(collectively, the "Subject Funds").

## II.   JURISDICTION AND VENUE

6.    This Court has jurisdiction pursuant to Title 28, United States Code, Sections 1345 and 1355.

6

7.    Venue is proper under Title 28, United States Code, Section 1355(b)(1)(A) and (B) because, among other things, actions giving rise to forfeiture took place in the Southern District of New York.

### III.  THE FRAUDULENT SCHEME AND SUBJECT ACCOUNT-1

8.    The Victim Company is an American-based corporation doing business worldwide.  Like many corporations, the Victim Company has contractors and vendors who are paid via wire transfer for services provided.   One such vendor frequently used by the Victim Company is based in Asia (the "Vendor").

9.    On or about August 10, 2015, an individual who represented himself to be a Vendor employee named "D. Talan, AR" ("Talan") and who was using an e-mail address that falsely appeared to be associated with the Vendor (the "Talan E-mail Address") sent an e-mail to an e-mail account maintained for the purpose of allowing the Victim Company to receive messages from outside vendors.  That e-mail account was monitored by employees of an outside corporation retained by the Victim Company for the purpose of communicating with the Victim Company's vendors and other payees (the "Professional Services Company").

10.   In the e-mail sent on August 10, 2015, "Talan" represented that the Vendor was a "supplier" to the Victim Company

and requested "a payment history report from May 1 to present." The e-mail was read that day by employees of the Professional Services Company. On or about August 11, 2015, an employee of the Professional Services Company, acting on behalf of the Victim Company, responded to Talan via the Talan E-mail Address, attaching a history of all invoices submitted by the Vendor during the time period May 2015 to August 2015.

11. On or about August 11, 2015, Talan, using the Talan E-mail Address, sent another e-mail that was received by the Professional Services Company indicating that the Vendor would be "changing our bank information" and requesting information regarding to whom "to email our new bank information." Approximately, an hour later, an employee of the Professional Services Company responded on behalf of the Victim Company providing instructions for submitting new bank account information.

12. Consistent with those instructions, on or about August 17, 2015, Talan, using the Talan E-mail Address, conveyed to the Professional Services Company new wire instructions for all future payments from the Victim Company to the Vendor, specifying that such payments should be made to Subject Account-1. On or about August 20, 2015, via a series of e-mails to the Talan E-mail Address, an employee of the Professional Services Company acting on behalf

8

of the Victim Company confirmed the account change and informed Talan that all future payments to the Vendor would be made to Subject Account-1.

13.  Consistent with the above, between on or about August 21, 2015, and on or about September 14, 2015, the Professional Services Company, on behalf of the Victim Company, caused approximately 16 transfers intended for the Vendor as payment from the Victim Company for services rendered to be wired to Subject Account-1.  All of these transfers originated from one or more Victim Company accounts maintained at Bank of America,[2] and the total value of these transfers, which ranged from less than $1,000 to more than $36 million, was approximately $98,879,545.80.

14.  On or about September 14, 2015, the Victim Company learned, through e-mail correspondence between employees of the Professional Services Company acting on behalf of the Victim Company and an actual representative of the Vendor who had a legitimate Vendor e-mail address, that the Vendor had not received a payment from the Victim Company since August 22, 2015 - i.e., roughly when "Talan" asked the Victim Company to begin sending payments to Subject Account-1.

_____

[2] Of those 16 transfers, 15 were processed through a correspondent bank account located in the Southern District of New York.

15.    Upon inspection, the Victim Company determined that the various e-mails from Talan bore significant indicia of fraud. For example, the Talan E-mail Address had a domain name of "@mail.md" while real e-mails from the Vendor and previously received by the Victim Company had a domain name that includes the Vendor's name. Moreover, the domain name indicated in the Talan E-mail Address is hosted by a service provider based in Moldova, while the Vendor's actual website, like the company itself, is based in Asia.

16.    Similarly, while the real Vendor is based in Asia – and had previously received payments via wires to banks based in its home country in Asia – Subject Account-1, into which "Talan" directed that the Subject Funds be transferred, is located in Cyprus and held by Eurobank, a Greek financial institution with no presence in the Vendor's home country.

17.    On September 17, 2015, a United States Magistrate Judge in the Southern District of New York authorized the restraint of assets in Subject Account-1, as well as certain of the Additional Accounts into which proceeds of the fraudulent scheme described above were transferred.  At least $284,483.00 remains restrained in Subject Account-1.[3]

---

[3] As explained above, approximately $74 million that was

### IV.  SUBSEQUENT WIRE TRANSFERS FROM SUBJECT ACCOUNT-1 TO SUBJECT ACCOUNTS -2, -3, and -4 in CYPRUS

18.   To further conceal and distribute the fraud proceeds, the perpetrators of this scheme almost immediately began moving those proceeds out of Subject Account-1 to the Additional Accounts under their control in Cyprus and around the world.  Many of these subsequent transfers took place through correspondent accounts located in the Southern District of New York.

19.   The following Additional Accounts all received transfers of the proceeds of the fraud described above directly from Subject Account-1.  These Additional Accounts have also been restrained and presently contain the following balances:

| Recipient Account | Bank | Balance |
|---|---|---|
| Subject Account-2 | Eurobank Cyprus Ltd. | $7,087,347.00 |
| Subject Account-3 | Hellenic Bank | $324,705.00 |
| Subject Account-4 | Hellenic Bank | €399,898.00 |

### V.  SUBSEQUENT TRANSFERS FROM SUBJECT ACCOUNT-1 TO ADDITIONAL SUBJECT ACCOUNTS

20.   As noted above, to conceal and distribute the proceeds of that fraud, scheme participants caused substantially all

transmitted by the Victim Company for deposit into Subject Account-1 was restrained by Eurobank Cyprus Ltd. before it could be settled in Subject Account-1 and has since been returned to the Victim Company.

of the fraudulently obtained proceeds to be transferred out of Subject Account-1 almost immediately after those funds were wired into that account by the Victim Company.  Because many of these subsequent transfers involved United States currency, substantially all of them were processed through correspondent bank accounts located in the Southern District of New York, including a correspondent account located at a financial institution based in New York, New York.

21.  Specifically, the following subsequent transfers of fraud proceeds from Subject Account-1 took place, all of which occurred shortly after the Victim Company first began transferring funds to Subject Account-1:

| Recipient Account | Date of Transfer | Amount |
| --- | --- | --- |
| Subject Account-9 | 9/9/2015 | $497,526.00 |
| | TOTAL | $497,526.00 |
| | | |
| Subject Account-15 | 9/1/2015 | $1,900,000.00 |
| | 9/1/2015 | $1,271,276.00 |
| | 9/8/2015 | $1,900,000.00 |
| | 9/8/2015 | $1,939,748.00 |
| | 9/9/2015 | $1,900,000.00 |
| | TOTAL | $8,911,024.00 |
| | | |
| Subject Account-16 | 9/3/2015 | $240,000.00 |
| | TOTAL | $240,000.00 |
| | | |
| Subject Account-17 | 8/28/2015 | €85016.00 |
| | 8/28/2015 | €135,780.00 |
| | 9/1/2015 | €262,330.00 |
| | 9/1/2015 | €466,466.00 |
| | 9/7/2015 | €1,350,000.00 |

| Recipient Account | Date of Transfer | Amount |
|---|---|---|
| | 9/7/2015 | €1,350,000.00 |
| | TOTAL | €3,649,592.00 |

### VI.   SUBSEQUENT TRANSFERS FROM SUBJECT ACCOUNT-2 TO OTHER OF THE ADDITIONAL ACCOUNTS

22.   As noted above, soon after funds obtained through the fraudulent scheme were transferred to Subject Account-1 by the Victim Company, at least some of those funds were transferred to another account at Eurobank Cyprus, that is, to Subject Account-2, and believed to be under the control of scheme participants.

23.   To further conceal and dissipate the proceeds of this fraudulent scheme, scheme participants continued to transfer the proceeds on to the Additional Accounts under their control, with many of these transfers occurring through correspondent accounts located in the Southern District of New York.   In particular, the following subsequent transfers of proceeds of the fraudulent scheme out of Subject Account-2 took place as follows, all of which began as early as August 26, 2015, just days after the scheme began:

| Recipient Account | Date of Transfer | Amount |
|---|---|---|
| Subject Account-9 | 9/9/2015 | $483,500.00 |
| | TOTAL | $483,500.00 |
| | | |
| Subject Account-12 | 9/2/2015 | $67,800.00 |
| | TOTAL | $67,800.00 |

13

| Recipient Account | Date of Transfer | Amount |
|---|---|---|
| Subject Account-5 | 8/26/2015 | $268,106.00 |
| | 8/31/2015 | $498,619.00 |
| | 9/2/2015 | $261,540.00 |
| | 9/3/2015 | $286,415.00 |
| | 9/4/2015 | $347,826.00 |
| | 9/8/2015 | $253,108.00 |
| | 9/9/2015 | $446,892.00 |
| | TOTAL | $2,362,506.00 |
| | | |
| Subject Account-6 | 9/2/2015 | $184,093.00 |
| | TOTAL | $184,093.00 |
| | | |
| Subject Account-7 | 9/4/2015 | $636,900.00 |
| | TOTAL | $636,900.00 |
| | | |
| Subject Account-8 | 9/4/2015 | $320,000.00 |
| | TOTAL | $320,000.00 |
| | | |
| Subject Account-10 | 9/11/2015 | $3,030.90 |
| | TOTAL | $3,030.90 |
| | | |
| Subject Account-11 | 9/11/2015 | $325,000.00 |
| | TOTAL | $325,000.00 |
| | | |
| Subject Account-13 | 9/11/2015 | $342,056.40 |
| | TOTAL | $342,056.40 |
| | | |
| Subject Account-14 | 9/11/2015 | €61,000.00 |
| | TOTAL | €61,000.00 |

## VII. SUBSEQUENT TRANSFERS FROM SUBJECT ACCOUNT-15 TO OTHER SUBJECT ACCOUNTS

24. As noted above, soon after funds obtained through the fraudulent scheme were transferred to Subject Account-1 by the Victim Company, at least some of those funds were transferred on to an account at Danske Bank in Estonia under the control of scheme participants - that is, Subject Account-15. Specifically, as detailed above, between approximately September 1, 2015 and September 9, 2015, at least $8,911,024.00 in United States currency was transferred from Subject Account-1 to Subject Account-15.

25. To further conceal and dissipate the proceeds of this fraudulent scheme, scheme participants continued to transfer the proceeds on to the Additional Accounts under their control, with many of these transfers occurring through correspondent accounts located in the Southern District of New York. In particular, the following subsequent transfers of proceeds of the fraudulent scheme out of Subject Account-15 took place as follows, all of which began as early as September 2, 2015, just days after the scheme began and almost immediately after funds were transferred from Subject Account-1 to Subject Account-15:

| Recipient Account | Date of Transfer | Amount |
|---|---|---|
| Subject Account-18 | 9/2/2015 | $15,540.99 |
| | 9/4/2015 | $24,626.49 |
| | 9/14/2015 | $27,352.89 |
| | TOTAL | $67,520.37 |
| | | |
| Subject Account-19 | 9/2/2015 | $111,980.00 |
| | 9/4/2015 | $990,400.00 |
| | 9/9/2015 | $733,300.00 |
| | 9/9/2015 | $980,300.00 |
| | 9/10/2015 | $95,765.26 |
| | TOTAL | $2,911,745.26 |
| | | |
| Subject Account-20 | 9/3/2015 | $1,625,000.00 |
| | 9/4/2015 | $395,000.00 |
| | 9/9/2015 | $1,010,000.00 |
| | 9/9/2015 | $806,200.00 |
| | TOTAL | $3,836,200.00 |

## VIII.  CLAIMS FOR FORFEITURE

### CLAIM ONE

### Forfeiture Under 18 U.S.C. §§ 981(a)(1)(C) and 984
### (Proceeds of Wire Fraud)

26.   Paragraphs 1 through 25 of this Complaint are repeated and re-alleged as if fully set forth herein.

27.   Title 18, United States Code, Section 981(a)(1)(C) subjects to forfeiture:

> Any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of section . . . any offense constituting "specified unlawful activity" (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense.

16

28.   Title 18, United States Code, Section 1956(c)(7)(A)
defines the term "specified unlawful activity" to mean, in relevant
part, "any act or activity constituting an offense listed in section
1961(1) . . . ."

29.   Title 18, United States Code, Section 1961(1)(B), in
turn, specifically refers to "any act which is indictable under any
of the following provisions of Title 18, United States Code . . .
Section 1343 (relating to wire fraud)."

30.   Title 18, United States Code, Section 1343 provides
that:

> Whoever, having devised or intending to devise
> any scheme or artifice to defraud, or for
> obtaining money or property by means of false
> or fraudulent pretenses, representations, or
> promises, transmits or causes to be transmitted
> by means of wire, radio, television
> communication in interstate or foreign
> commerce, any writings, signs, signals,
> pictures, or sounds for the purpose of executing
> such scheme or artifice, shall be fined under
> this title or imprisoned not more than 20 years,
> or both.

31.   Further, pursuant to Title 18, United States Code,
Section 984:

> (a)(1): In any forfeiture action in
> rem in which the subject property is
> cash, monetary instruments in bearer
> form, funds deposited in an account
> in a financial institution . . .

17

(A) it shall not be necessary for the Government to identify the specific property involved in the offense that is the basis for the forfeiture; and

(B) it shall not be a defense that the property involved in such an offense has been removed and replaced by identical property.

(a)(2) Except as provided in subsection (b), any identical property found in the same place or account as the property involved in the offense that is the basis for the forfeiture shall be subject to forfeiture under this section.

32. As detailed above, the perpetrators of this scheme used the wires – including email communications – to cause the Victim Company to make the initial transfers to Subject Account-1 under false and fraudulent pretenses. The wires were then used by scheme participants as a part of the scheme to further transfer funds from Subject Account-1 into the Additional Accounts. As such, the Subject Funds constitute or were derived from proceeds traceable to wire fraud, and thus, are subject to forfeiture pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 984.

18

## CLAIM TWO

### Forfeiture Under 18 U.S.C. §§ 981(a)(1)(A) and 984
### (Property Involved in International Money Laundering)

33.  Paragraphs 1 through 25 of this Complaint are repeated and re-alleged as if fully set forth herein.

34.  Title 18, United States Code, Section 981(a)(1)(A) subjects to forfeiture:

> Any property, real or personal, involved in a transaction or attempted transaction in violation of section 1956 . . . of this title, or any property traceable to such property.

35.  Title 18, United States Code, Section 1956(a)(2)(A) provides criminal penalties for:

> Whoever transports, transmits, or transfers, or attempts to transport, transmit or transfer a monetary instrument or funds from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States –

>> (A)  with the intent to promote the carrying on of specified unlawful activity.

36.  Title 18, United States Code, Section 1956(c)(7)(A) defines the term "specified unlawful activity" to mean, in relevant part, "any act or activity constituting an offense listed in section 1961(1) . . . ."

19

37.   Title 18, United States Code, Section 1961(1)(B), in turn, specifically refers to "any act which is indictable under any of the following provisions of Title 18, United States Code . . . Section 1343 (relating to wire fraud)." As detailed above, the scheme participants caused funds to be transferred from within the United States to Subject Account-1 in Cyprus under false and fraudulent pretenses and then rapidly transferred those funds from Subject Account-1 on to the Additional Accounts located in various countries outside of the United States, doing so, at least in part, to promote the fraudulent scheme carried out against the Victim Company.  As such, the Subject Funds constitute property involved in international money laundering in violation of Title 18, United States Code, Section 1956(a)(2)(A), or property traceable thereto, and are therefore subject to forfeiture pursuant to Title 18, United States Code, Sections 981(a)(1)(A) and 984.

## CLAIM THREE

**Forfeiture Under 18 U.S.C. §§ 981(a)(1)(A) and 984
(Property Involved in Concealment Money Laundering)**

38.   Paragraphs 1 through 25 of this Complaint are repeated and re-alleged as if fully set forth herein.

39.   Title 18, United States Code, Section 1956(a)(1)(B)(i) provides criminal penalties for:

(a)(1)   Whoever knowing that the property

20

involved in a financial transaction represents
the proceeds of some form of unlawful activity,
conducts or attempts to conduct a financial
transaction which in fact involves the proceeds
of specified unlawful activity –

   (B)  knowing that the transaction is
designed in whole or in part –

      (i)  to conceal or disguise the
nature, the location, the source, the
ownership, or the control of the proceeds of
specified unlawful activity.

40.   As detailed above, the scheme participants rapidly
transferred proceeds obtained through the wire fraud scheme
described herein from Subject Account-1 on to the Additional
Accounts, doing so at least in part to conceal the nature, source,
ownership and control of those funds.  As such, the Subject Funds
in the Additional Accounts constitute property involved in money
laundering in violation of Title 18, United States Code, Section
1956(a)(1)(B)(i), or property traceable thereto, and are therefore
subject to forfeiture pursuant to Title 18, United States Code,
Sections 981(a)(1)(A) and 984.

## CLAIM FOUR

**Forfeiture Under 18 U.S.C. §§ 981(a)(1)(A) and 984**
**(Property Involved in Monetary Transactions**
**In Property Derived from Specified Unlawful Activity)**

41.   Paragraphs 1 through 25 of this Complaint are
repeated and re-alleged as if fully set forth herein.

42.   Title 18, United States Code, Section 981(a)(1)(A) subjects to forfeiture:

> Any property, real or personal, involved in a transaction or attempted transaction in violation of section . . . 1957 . . . of this title, or any property traceable to such property.

43.   Title 18, United States Code, Section 1957(a)(1) provides criminal penalties for:

> (a)   Whoever, in any of the circumstances set forth in subsection (d), knowingly engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity.

44.   Subsection (d)(1) of that Section in turn provides that "the offense . . . takes place in the United States or in the special maritime and territorial jurisdiction of the United States."

45.   As detailed above, the scheme participants caused substantially in excess of $10,000 to be transferred from the Victim Company in the United States to Subject Account-1 and then on to the Additional Accounts, knowing that those funds constituted criminally derived property and, in particular, property derived from the wire fraud scheme detailed herein.  As detailed above, many of the subsequent transfers of proceeds from Subject Account-1 to the Additional Accounts occurred through correspondent accounts located

22

in the Southern District of New York.   As such, the Subject Funds
in the Additional Accounts constitute property involved in monetary
transactions in property derived from specified unlawful activity,
in violation of Title 18, United States Code, Section 1957, or
property traceable thereto, and are therefore subject to forfeiture
pursuant to Title 18, United States Code, Sections 981(a)(1)(A) and
984.

WHEREFORE, plaintiff United States of America prays that process issue to enforce the forfeiture of the Subject Funds and that all persons having an interest in the Subject Funds be cited to appear and show cause why the forfeiture should not be decreed, and that this Court decree forfeiture of the Subject Funds to the United States of America for disposition according to law, and that this Court grant plaintiff such further relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Dated:  New York, New York
        April 14, 2016

                         PREET BHARARA
                         United States Attorney for
                         the Southern District of New York
                         Attorney for the Plaintiff
                         United States of America

        By:      _____
                         Edward B. Diskant
                         Assistant United States Attorney
                         One St. Andrew's Plaza
                         New York, New York 10007

## VERIFICATION

STATE OF NEW YORK              )
COUNTY OF NEW YORK             )
SOUTHERN DISTRICT OF NEW YORK )

      JONATHAN POLONITZA, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigations and as such has responsibility for the within action; that he has read the foregoing Verified Complaint and knows the contents thereof; and that the same is true to the best of his own knowledge, information and belief.

      The sources of deponent's information and the ground of his belief are official records and files of the United States and information obtained directly and indirectly by deponent during an investigation of alleged violations of federal criminal laws.


_____
JONATHAN POLONITZA
Special Agent
Federal Bureau of Investigations


Sworn to before me this
1st day of April, 2016

_____
NOTARY PUBLIC

MARCO DASILVA
Notary Public, State of New York
No. 01DA6145603
Qualified in Nassau County
My Commission Expires May 8, 2018